1                  **UNITED STATES DISTRICT COURT**

2            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

3  UNITED STATES OF AMERICA,       )
                               )  No. 25-cr-03286-BTM

4        Plaintiff,      )
                               )

5  v.                        )  September 11, 2025
                               )

6  KASSANDRA SANCHEZ,            )
                               )  Courtroom 15B

7        Defendant.      )
                               )  San Diego, California

8  _____)

9                   TRANSCRIPT OF PROCEEDINGS

10                   (Motion Hearing)

11   **BEFORE THE HONORABLE BARRY TED MOSKOWITZ, DISTRICT JUDGE**

12  APPEARANCES:
    FOR THE PLAINTIFF:       PATRICK C. SWAN

13                        Assistant U.S. Attorney
                        U.S. Attorney's Office

14                        Southern District of California
                        880 Front Street, Room 6293

15                        San Diego, CA  92101-8893
                        (619)557-5610

16

17  FOR THE DEFENDANT:       ADAM F. DOYLE
                        Law Office of Adam F. Doyle

18                        444 West "C" Street, Suite 310
                        San Diego, CA  92101

19                        (619)438-0816
                        Adamfdoyle@gmail.com

20

21  COURT REPORTER:          JENNIFER GIBSON
                        CACSR NO. 12802
                        U.S. District Court

22                        333 West Broadway, Suite 420
                        San Diego, CA 92101

23                        Jennifer_Gibson@casd.uscourts.gov

24     **(Reported by Stenotype; Transcribed by Computer)**

25

```
1              (Thursday, September 11, 2025; 5:20 p.m.)

2

3                    P R O C E E D I N G S

4

5         THE CLERK:  CALLING CALENDAR MATTER NUMBER 4,

6  25-CR-3286, UNITED STATES OF AMERICA VS. KASSANDRA SANCHEZ.

7         MR. DOYLE:  GOOD AFTERNOON, YOUR HONOR.  ADAM DOYLE ON

8  BEHALF OF MS. SANCHEZ WHO'S IN CUSTODY AND SHOULD BE HERE

9  SHORTLY.

10         MR. SWAN:  GOOD AFTERNOON, YOUR HONOR.  PATRICK SWAN

11  FOR THE UNITED STATES.

12         THE COURT:  HOW LONG DO YOU THINK WE WILL BE?

13         MR. SWAN:  THE UNITED STATES HAS ALREADY SUBMITTED A

14  WRITTEN MOTION THAT CONTAINS THE MAJORITY OF THE ARGUMENTS THAT

15  I WILL MAKE.  SO IN TERMS OF, I GUESS, PROCEEDING MORE

16  EXPEDITIOUSLY, PERHAPS THE DEFENSE COULD PROVIDE THEIR RESPONSE

17  TO THE MOTION, AND THEN I CAN PROVIDE A REPLY AND THE MATTER

18  WILL BE SUBMITTED TO THE COURT PENDING ANY QUESTIONS THE COURT

19  MAY HAVE.

20         MR. DOYLE:  YOUR HONOR, I WOULD ASK THAT BECAUSE IT IS

21  THE GOVERNMENT'S BURDEN, AS IT WAS AT THE INITIAL DETENTION

22  HEARING, THE GOVERNMENT PROVIDE ARGUMENT.  I WILL THEN RESPOND.

23  I WILL LIKELY, DEPENDING ON WHAT GOVERNMENT HAS TO SAY, HAVE

24  ABOUT TEN MINUTES OF ARGUMENT.

25          AND FOR THE RECORD MS. SANCHEZ IS BEFORE THE COURT, YOUR
```

```
 1  HONOR, ASSISTED BY THE CERTIFIED SPANISH LANGUAGE INTERPRETER.
 2          THE COURT:  THEN WE WILL TAKE A BATHROOM BREAK NOW.
 3          MR. DOYLE:  YES, YOUR HONOR.
 4          MR. SWAN:  UNDERSTOOD.  THANK YOU.
 5      (WHEREUPON, A BRIEF RECESS WAS TAKEN.)
 6          THE CLERK:  RECALLING CALENDAR MATTER NUMBER 4,
 7  25-CR-3286.
 8          THE COURT:  I READ THE TRANSCRIPT OF THE HEARING
 9  BEFORE THE MAGISTRATE JUDGE, AND I HAVE READ AND I WILL ACCEPT
10  THE GOVERNMENT'S WRITTEN SUBMISSION.
11    MR. SWAN, DO YOU HAVE ANYTHING TO ADD?
12          MR. SWAN:  YES, YOUR HONOR.  AND I'LL DO MY BEST TO
13  SUMMARIZE, GIVEN THE COURT'S REVIEW OF THOSE MATERIALS.  THIS
14  IS A DE NOVO REVIEW, AND THE UNITED STATES RESPECTFULLY MOVES
15  THIS COURT TO REVOKE THE PRETRIAL RELEASE ORDER AND DETAIN THIS
16  DEFENDANT BECAUSE THE EVIDENCE SHOWS BY PREPONDERANCE OF THE
17  EVIDENCE THAT NO CONDITION OR COMBINATION OF CONDITIONS WILL
18  REASONABLY ASSURE THIS DEFENDANT'S APPEARANCE AS REQUIRED BASED
19  ON THE RELEVANT 3142(g) FACTORS.  AND THIS IS PRINCIPALLY BASED
20  ON THE -- THE SIGNIFICANT PENALTIES THIS DEFENDANT IS FACING IN
21  THE INDICTMENT, THE CONSIDERABLE STRENGTH OF THE EVIDENCE IN
22  THIS CASE, THE STRONG TIES --
23          THE COURT:  PLEASE DO NOT REPEAT WHAT IS IN YOUR
24  PAPERS.
25          MR. SWAN:  UNDERSTOOD.  I WILL FURTHER SYNTHESIZE.
```

1    ONE THING ABOUT THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

2    THAT WAS NOT DETAILED IN THE MOTION IS THAT THE LOSS AMOUNT IN

3    THIS CASE HAS NOT BEEN DETERMINED.  AND WHAT BY -- WHAT I MEAN

4    BY THAT IS, AT THE TIME OF ARREST, VARIOUS DOCUMENTS WERE FOUND

5    IN THE POSSESSION OF THE DEFENDANTS IN THE CAR WHEN THEY

6    CROSSED.  THIS INCLUDE A MEDI-CAL CARD IN THE -- MR. JUSTIN

7    SOSA'S NAME, EBT CARDS IN JUSTIN SOSA'S NAME, BANK CARDS IN

8    JUSTIN SOSA'S NAME.  IT APPEARS THAT HER CO-DEFENDANT WAS

9    TAKING OUT DOCUMENTS IN HER BROTHER'S NAME TO RECEIVE PUBLIC

10   ASSISTANCE FROM THE STATE OF CALIFORNIA.  AND BASED ON

11   PRELIMINARY RECORDS, IT LOOKS LIKE THAT OVER $100,000 OF BILLS

12   WERE BILLED OUT UNDER JUSTIN SOSA'S MEDI-CAL NUMBER FOR MEDICAL

13   TREATMENT IN THE UNITED STATES.  THEIR BANK CARDS AT BANK OF

14   AMERICA, CHIME, AND WHAT APPEAR TO BE THREE EBT CARDS FOUND IN

15   THEIR POSSESSION.

16   SO THE UNITED STATES IS INVESTIGATING TO SEE WHAT THE LOSS

17   AMOUNT IS, BUT THAT MAY SIGNIFICANTLY CHANGE THE SENTENCING

18   GUIDELINES THAT THIS DEFENDANT MAY FACE AT THE END OF THE DAY

19   IN ADDITION TO THE AGGRAVATED IDENTITY THEFT COUNTS WHICH CARRY

20   TWO-YEAR CONSECUTIVE SENTENCES.

21   AS TO THE STRENGTH OF THE EVIDENCE, THE MAGISTRATE JUDGE IN

22   THE UNITED STATES' VIEW WAS INCORRECT ON THIS FINDING.  THIS

23   DEFENDANT'S CONDUCT WAS CAUGHT ON VIDEO.  I MEAN, SHE IS

24   ACTIVELY DEPICTED TAKING THE FRAUDULENT CALIFORNIA ID CARD,

25   HANDING IT TO THE PRIMARY -- THE CUSTOMS AND BORDER PROTECTION

OFFICER, AND MAKING FALSE STATEMENTS TO THE OFFICERS TO INDUCE

THEM TO BELIEVE THAT THIS WAS JUSTIN DANIEL SOSA WHEN IN FACT

IT WAS HER BOYFRIEND, THE CO-DEFENDANT, DEFENDANT VILLEGAS.

THERE'S ALSO --

**THE COURT:**  WHAT IS THE MANDATORY MINIMUM SENTENCE ON

THIS CASE?

**MR. SWAN:**  THERE ARE CURRENTLY FIVE AGGRAVATED

IDENTITY THEFT COUNTS CHARGED AGAINST THIS DEFENDANT.  IF

CONVICTED OF EACH, SHE IS FACING A MINIMUM SENTENCE OF TWO

YEARS AND A MAXIMUM SENTENCE OF TEN YEARS.  THE COURT CAN RUN

THE FOUR AGGRAVATED IDENTITY THEFT COUNTS CONCURRENT TO ONE

THAT MUST BE SENTENCED TWO YEARS CONSECUTIVE TO ANY OTHER

OFFENSE IN THE CASE.  AND SO THE MINIMUM SENTENCE IS TWO YEARS.

THE PHONE EVIDENCE -- AND WE ARE STILL IN THE PROCESS OF

OBTAINING THE EVIDENCE ON THE PHONES -- BUT THIS DEFENDANT, AS

WELL AS HER CO-DEFENDANT, GAVE CONSENT TO SEARCH THEIR PHONES

DURING THEIR POST-ARREST INTERVIEWS.  AND THAT PHONE EVIDENCE

SHOWS THAT HER CO-DEFENDANT HAD A PHONE NUMBER THAT WAS IN

CONTACT WITH HER PHONE NUMBER.  THERE WERE PHOTOGRAPHS OF THEM

BEING SEXUALLY INTIMATE WITH EACH OTHER.  HER STORY IN HER

POST-ARREST INTERVIEW THAT THIS PERSON -- THE PERSON IN THE CAR

WITH HER WAS HER BOYFRIEND AND THAT SHE HAD SEXUAL RELATIONS

WITH HER BROTHER.  AND IN THE CO-DEFENDANT'S INTERVIEW, AFTER

INITIALLY TELLING LIES TO THE AGENTS, FULLY ADMITTED THAT HIS

TRUE NAME IS LUIS ENRIQUE VILLEGAS BROWNELL, HIS GIRLFRIEND'S

KASSANDRA SANCHEZ, HE IS NOT JUSTIN DANIEL SOSA, AND THE NUMBER
THAT IS IN HIS PHONE BELONGS TO HIM.

SO IT APPEARS THAT THIS DEFENDANT WASN'T TRUTHFUL WITH
AGENTS DURING HER POST-ARREST INTERVIEW, AND MR. VILLEGAS, HER
CO-DEFENDANT, TRUTHFULLY ADMITTED THAT HE HAD BEEN FALSELY
POSING AS HER BROTHER AND LIVING WITH HER IN THE UNITED STATES.
HER CO-DEFENDANT ALSO IDENTIFIED THE BROTHER IN A SIX-PACK AND
CLAIMED IN HIS POST-ARREST STATEMENT THAT HIS CO-DEFENDANT,
KASSANDRA SANCHEZ, OFFERED JUSTIN DANIEL SOSA'S IDENTITY TO
OTHER PEOPLE TO USE AND MADE ARRANGEMENTS TO DO SO.  THE UNITED
STATES ANTICIPATES THAT THAT EVIDENCE IS IN THE CELL PHONES,
BUT MS. SANCHEZ'S CELL PHONE HAD -- I BELIEVE IT WAS A IPHONE
16 PLUS WHICH IS BEYOND THE CAPABILITIES OF CELLEBRITE SOFTWARE
RIGHT NOW, AND SO THE TECHNOLOGY NEEDS TO ESSENTIALLY IMPROVE
BEFORE IT CAN BE FULLY DOWNLOADED FOR REVIEW.  BUT WE DO HAVE A
MANUAL REVIEW OF EVIDENCE OBTAINED FROM THAT PHONE CURRENTLY.

I THINK THERE WAS AN ARGUMENT AS TO THE THIRD FACTOR IN
NATURE OR THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT THAT
THE COURT CAN IMPOSE CONDITIONS OF LOCATION MONITORING OR HOME
DETENTION TO REASONABLY ASSURE THIS DEFENDANT'S APPEARANCE AS
REQUIRED.  THIS DEFENDANT ALREADY FLED TO MEXICO BEFORE ON
PRE-TRIAL RELEASE.  SHE'S ALREADY MISSED A COURT APPEARANCE AS
ORDERED IN A PRIOR FELONY CASE IN THIS DISTRICT.  LOCATION
MONITORING WON'T STOP HER FROM GOING TO MEXICO TO SEE HER MOM
AND HER SIX-YEAR-OLD SON.  HOME DETENTION WON'T EITHER.  THE

1    INCENTIVE IS TOO GREAT FOR HER TO NOT GO, TO AVOID PROSECUTION,

2    LIKELY INCARCERATION IN THIS CASE.  AND, YOU KNOW, STAYING HERE

3    WILL ONLY CAUSE HER TO FACE ADDITIONAL PROSECUTION AND LIKELY

4    INCARCERATION LEADING TO THE INCENTIVE TO AVOID SUCH

5    CONSEQUENCES.

6        AND LASTLY -- AND THE COURT -- I PROVIDED THIS AS AN

7    ALTERNATIVE ARGUMENT IN OUR MOTION.  IF THE COURT IS

8    CONSIDERING BOND, A 20,000-DOLLAR BOND SECURED BY A NON-FAMILY

9    MEMBER WILL NOT INCENTIVIZE THIS DEFENDANT TO COMPLY WITH HER

10   BOND CONDITIONS, PARTICULARLY GIVEN HER PRIOR HISTORY.  IN HER

11   PRIOR CASE, SHE WAS GIVEN A 15,000-DOLLAR PERSONAL APPEARANCE

12   BOND, I BELIEVE SECURED BY ONE FINANCIALLY RESPONSIBLE ADULT.

13   SHE QUICKLY TRAVELED MULTIPLE TIMES TO MEXICO, LOST CONTACT

14   WITH PROBATION OFFICER, FLED TO MEXICO AND MISSED THE COURT

15   APPEARANCE AND THEN WAS LATER ARRESTED ON THE BENCH WARRANT AND

16   HER BOND REVOKED.  A BOND AMOUNT $5,000 HIGHER WILL NOT

17   INCENTIVIZE HER TO COMPLY WITH BOND CONDITIONS.  SO IF THE

18   COURT IS CONSIDERING A BOND AMOUNT, THE UNITED STATES

19   RECOMMENDS A SUBSTANTIALLY HIGHER BOND, AT LEAST TWICE THE

20   AMOUNT AS THE PREVIOUS BOND.

21        **MR. DOYLE:**  YES, YOUR HONOR.  THANK YOU.  JUST TO

22   TOUCH ON MR. SWAN'S LAST POINT, BECAUSE WE ARE IN A DE NOVO

23   REVIEW BEFORE THIS COURT AND THE GOVERNMENT APPEALED THE

24   MAGISTRATE'S DETENTION ORDER, I AM ACTUALLY REQUESTING THAT

25   THE -- THAT THE COURT SET A LOWER BOND THAN WAS PREVIOUSLY SET

1   BY JUDGE GODDARD.  I AM REQUESTING THE COURT SET BOND IN THE

2   AMOUNT OF $15,000 WITH THE SIGNATURE OF ONE FINANCIALLY

3   RESPONSIBLE ADULT THAT DOES NOT NECESSARILY HAVE TO BE RELATED,

4   AS WELL AS A 10 PERCENT CASH DEPOSIT.

5       THE REASON FOR THAT IS BECAUSE THE MORE THAT I LEARN ABOUT

6   THIS CASE, THE MORE THAT IT BECOMES CLEAR TO ME THAT THE VAST

7   MAJORITY OF THE GOVERNMENT'S ALLEGATIONS AND EVIDENCE REALLY

8   PERTAIN TO THE CO-DEFENDANT AND NOT TO MS. SANCHEZ AND THAT THE

9   MAIN PIECE OF EVIDENCE AGAINST HER, WHICH IS WHAT WE HAVE TO

10  FOCUS ON RIGHT NOW, IS THAT SHE WAS THE GIRLFRIEND OF

11  MR. VILLEGAS, THE CO-DEFENDANT.

12      THIS IS NOT A PRESUMPTION CASE.  YOU KNOW, CONGRESS CREATES

13  A PRESUMPTION IN SOME CASES, AND THIS IS NOT ONE OF THOSE

14  CASES.  IN THIS DISTRICT, WE SEE A LOT OF PRESUMPTION CASES,

15  AND EVEN IN THOSE CASES, BOND IS SET.  THE PRESUMPTION HERE IS

16  IN FACT IN FAVOR OF RELEASE.  THE SUPREME COURT AND NINTH

17  CIRCUIT CASE LAW SPECIFIES THAT IT SHOULD BE A RARE CASE WHERE

18  THE COURT FINDS THAT NO COMBINATION OF CONDITIONS CAN ASSURE

19  THAT THE DEFENDANT WILL SHOW --

20          THE REPORTER:  WILL SHOW -- I'M SORRY, WHAT?  WILL

21  SHOW WHAT?

22          MR. DOYLE:  WILL SHOW BACK UP IN COURT.  IN TOWNSEND,

23  WHICH THE GOVERNMENT CITES SEVERAL TIMES, THE NINTH CIRCUIT

24  SAID THAT DOUBT SHOULD BE RESOLVED IN FAVOR OF THE DEFENDANT.

25  AND SO IF -- AND I DON'T THINK THE GOVERNMENT HAS CREATED ANY

1    DOUBT THAT MS. SANCHEZ WILL SHOW BACK UP -- BUT IF THERE IS A

2    DOUBT, THAT HAS TO BE RESOLVED IN FAVOR OF MS. SANCHEZ, NOT IN

3    FAVOR OF THE GOVERNMENT WHO BEARS THE BURDEN HERE.

4        I WOULD ALSO NOTE THAT ALTHOUGH U.S. V. KOENIG SAYS THAT IT

5    IS A DE NOVO REVIEW, THIS COURT DOES NOT HAVE TO PROCEED AS IF

6    THERE WAS NO MAGISTRATE DECISION.  KOENIG, IN FACT, SAYS THE

7    COURT CAN TAKE INTO CONSIDERATION AND IT'S THE COURT'S

8    DISCRETION THE MAGISTRATE'S FINDINGS.  WE DO NOT HAVE TO JUST

9    THROW THEM OUT FOR PURPOSES OF THIS HEARING.  AND I SAY THAT

10   BECAUSE ONE OF THE FIRST THINGS THAT JUDGE GODDARD SAID AT THE

11   INITIAL DETENTION HEARING WAS, "I READ THE GOVERNMENT'S PAPERS,

12   AND IT LOOKS LIKE IT MOSTLY FOCUSES ON THE CO-DEFENDANT, NOT ON

13   MS. SANCHEZ."  AND I -- FROM MY PERSPECTIVE, THAT IS TRUE, AND

14   I THINK THE MAGISTRATE'S REACTION TO THAT WAS VERY ASTUTE.  AND

15   I DO NOT SEE THAT ANYTHING HAS CHANGED FROM THAT DETENTION

16   HEARING UNTIL TODAY REGARDING THE EVIDENCE PROFFERED BY THE

17   GOVERNMENT.

18       THE NATURE AND CIRCUMSTANCES OF THIS OFFENSE:

19       SO I WAS LISTENING TO MR. SWAN.  HE LED HIS ARGUMENT WITH

20   THE CHARGES AGAINST MS. SANCHEZ AND THE WEIGHT OF THE EVIDENCE.

21   THOSE, TO ME, ARE CERTAINLY NOT THE MOST IMPORTANT FACTORS

22   HERE.  AND, IN FACT, THE WEIGHT OF THE EVIDENCE IS SUPPOSED TO

23   BE THE LEAST IMPORTANT FACTOR.  AND I DON'T JUST WANT TO GIVE

24   THAT LIP SERVICE.  I -- I HOPE THAT THE COURT TAKES THAT INTO

25   CONSIDERATION HERE.  MS. SANCHEZ HAS BEEN CHARGED WITH 12

1   DIFFERENT COUNTS.  I SEE THIS CASE AS AN OVER-CHARGING.  AND

2   OBVIOUSLY I CANNOT CONTROL WHAT THE GOVERNMENT CHARGES, THE

3   COURT HAS NO SAY IN THAT, BUT I DO NOT THINK THE GOVERNMENT

4   SHOULD BE ALLOWED TO TAKE WHAT IS ESSENTIALLY A CASE OF

5   MISAPPROPRIATION OF IDENTITY TO CROSS THE BORDER AS TO THE

6   CO-DEFENDANT, STACK ON FIVE AGGRAVATED IDENTITY COUNTS AS WELL

7   AS VARIOUS OTHER COUNTS THAT ARE RELATED TO THAT CORE THEME,

8   AND THEN ARGUE TO THE COURT THAT MS. SANCHEZ SHOULD BE KEPT IN

9   CUSTODY BECAUSE SHE IS FACING SO MANY COUNTS THAT LEAD TO SO

10  MUCH TIME IN CUSTODY.  ALTHOUGH, TECHNICALLY, IF MS. SANCHEZ

11  WAS SENTENCED, THE COURT COULD STACK THOSE AGGRAVATED IDENTITY

12  THEFT COUNTS AND RUN THEM CONSECUTIVE, THE COURT HAS DISCRETION

13  NOT TO DO THAT.  SO I DO NOT THINK THAT A TEN-YEAR MINIMUM

14  SENTENCE IS REALISTIC IN THIS CASE, ALTHOUGH I CANNOT SAY WHAT

15  WILL HAPPEN MOVING FORWARD.

16      I SAID IT AT THE INITIAL DETENTION HEARING, AND I'LL SAY IT

17  AGAIN.  I THINK THAT THE CASE AGAINST MS. SANCHEZ SPECIFICALLY

18  IS INFLATED.  I HAVE NOT HEARD EVIDENCE THAT SHOWS THAT SHE

19  WILLFULLY PARTICIPATED IN ANY CONSPIRACY.  THE VIDEO THAT THE

20  GOVERNMENT MENTIONED IS MS. SANCHEZ CROSSING THE BORDER WITH

21  HER BOYFRIEND IN A CAR.  I AGREE THAT THAT VIDEO EXISTS.  IF --

22  IF WE ASSUME THAT SHE KNEW THAT HE WAS NOT ALLOWED TO COME IN,

23  THEN ESSENTIALLY IT'S AN AIDING AND ABETTING OF FALSE

24  IMPERSONATION OF A U.S. CITIZEN.  IT DOES NOT MEAN THAT SHE

25  PARTICIPATED IN A IDENTITY THEFT CONSPIRACY OR THAT SHE IS

1    GUILTY OF ANY OF THE AGGRAVATED IDENTITY THEFT COUNTS.  SO I

2    SAY ALL THAT TO SAY WE SHOULD NOT ALLOW THE SENTENCING

3    EXPOSURE, IN THIS CASE IN PARTICULAR, TO WEIGH AGAINST BOND.

4        THE WEIGHT OF THE EVIDENCE, YOUR HONOR -- HONESTLY, THE

5    WEIGHT A WEIGHT OF THE EVIDENCE, EVEN IF WE CONSIDER THE

6    CO-DEFENDANT, I THINK IS SOMEWHAT WEAK IN THIS CASE, AND IT'S

7    CERTAINLY WEAK AS TO MS. SANCHEZ.  LIKE I SAID BEFORE, THE

8    GOVERNMENT'S ARGUMENT IS THAT SHE'S HIS GIRLFRIEND, SHE MUST

9    HAVE KNOWN WHAT WAS GOING ON HERE.  AND, REALLY, THE BULK OF

10   THE GOVERNMENT'S BAIL APPEAL FOCUSES ON THE WEIGHT OF THE

11   EVIDENCE EVEN THOUGH IT'S THE LEAST IMPORTANT FACTOR.  WE'RE

12   NOT DENYING THAT THE CO-DEFENDANT HERE IS NOT MS. SANCHEZ'S

13   BROTHER, BUT THE WEIGHT OF THE EVIDENCE FACTOR HERE HAS TO

14   CENTER ON MS. SANCHEZ AND NOT THE CO-DEFENDANT.  AND THERE ARE

15   SEVERAL POINTS IN THE GOVERNMENT'S APPEAL WHERE IT DEALS

16   EXCLUSIVELY WITH THE CO-DEFENDANT, AND I THINK THAT'S -- IT'S A

17   BIT OF A MISDIRECTION, I WOULD SAY, BECAUSE WE NEED TO FOCUS ON

18   MS. SANCHEZ.  AS I MENTIONED DURING THE MAGISTRATE PROCEEDINGS,

19   WE HAVE A MERE PRESENCE JURY INSTRUCTION.  JUST BECAUSE

20   SOMEBODY HAPPENS TO BE WITH ANOTHER PERSON WHO IS COMMITTING A

21   CRIME DOES NOT AUTOMATICALLY MEAN THAT THAT PERSON, EITHER HAS

22   KNOWLEDGE OF THE CRIME, AND CERTAINLY NOT THAT THAT PERSON HAS

23   WILLFULLY PARTICIPATED IN IT.

24       THERE'S ALSO -- I WANTED TO BRING TO THE COURT'S ATTENTION

25   -- A QUESTION OF WHETHER MS. SANCHEZ'S BROTHER -- AND I THINK

1    MR. SWAN REFERRED TO HIM AS "JUSTIN" -- WHETHER HIS IDENTITY

2    WAS TRULY STOLEN, OR WHETHER HE WAS ACTUALLY SELLING THAT

3    IDENTITY TO SOMEONE ELSE.  IT LOOKS LIKE THE CO-DEFENDANT

4    ACTUALLY SAID THAT IN HIS POST-ARREST STATEMENT, THAT HE

5    PURCHASED THE IDENTITY OF MS. SANCHEZ'S BROTHER.  I'M NOT

6    SAYING THAT BECAUSE IT MEANS THAT HE WOULD BE INNOCENT OF THE

7    IDENTITY THEFT CHARGE, BUT IF THE GOVERNMENT IS ARGUING THAT

8    MS. SANCHEZ SOMEHOW STOLE HER BROTHER'S IDENTITY AND THAT THAT

9    IS A FACTOR AGAINST GRANTING BAIL, THEN I THINK THAT THAT FACT

10   HAS TO BE LOOKED AT SKEPTICALLY.  BECAUSE I -- I THINK THERE IS

11   EVIDENCE HERE TO SUGGEST THAT THAT IS NOT WHAT HAPPENED AND

12   THAT ACTUALLY HER BROTHER HAD SOLD HIS IDENTITY TO SOMEWHERE --

13   SOMEONE ELSE.

14       I WOULD ALSO SAY THAT IT LOOKS LIKE THE ONLY TIME THAT

15   JUSTIN, HER BROTHER, SPOKE WITH LAW ENFORCEMENT WAS BACK IN

16   APRIL WHEN HE CAME TO THE BORDER AND TRIED TO CROSS.  MR. SWAN

17   CAN CORRECT ME, BUT I DO NOT BELIEVE THAT THE GOVERNMENT HAS

18   INTERVIEWED HIM SINCE THAT TIME, WHICH IS KIND OF INTERESTING

19   TO ME THAT THIS SUPPOSED VICTIM OF THE IDENTITY THEFT HAS NEVER

20   BEEN SPOKEN TO SINCE BACK IN APRIL.  AND SO WE REALLY DO NOT

21   KNOW FROM HIS PERSPECTIVE WHAT HAPPENED.

22       MS. SANCHEZ IS 24 YEARS OLD.  SHE WAS BORN IN SAN DIEGO.

23   SHE LIVED HERE UNTIL SHE WAS 7.  SHE CAME BACK AND WENT TO THE

24   SIXTH GRADE HERE, AND SHE HAS LIVED IN SAN DIEGO FOR THE PAST

25   YEAR AND THREE MONTHS.  SHE WAS LIVING WITH HER SON HERE,

1    ALTHOUGH HER SON IS CURRENTLY WITH HER MOTHER IN TIJUANA.  BUT

2    BECAUSE SHE HAS LIVED HERE THROUGHOUT HER LIFE, SHE HAS STRONG

3    TIES HERE.  SHE HAS A SISTER HERE IN MISSION VALLEY.  SHE HAS A

4    BROTHER HERE.  SHE WAS WORKING AT RANDY'S MARKET IN SAN DIEGO,

5    AND SO SHE HAS TIES TO THOSE CO-WORKERS.  SHE'S A STABLE

6    PERSON.  AND I SPOKE WITH THE PROBATION OFFICER THAT WAS

7    SUPERVISING HER FROM HER PREVIOUS CASE, AND I SAID, "DID YOU

8    HAVE ANY ISSUES WITH HER WHILE ON SUPERVISED RELEASE," AND SHE

9    SAID, "NO, SHE WAS ACTUALLY ON THE LOWEST FORM OF SUPERVISED

10   RELEASE, THE ADMINISTRATIVE CASE LOAD."  AND I'M SURE THE COURT

11   KNOWS THAT PEOPLE ONLY GO ON TO THE ADMINISTRATIVE CASE LOAD

12   WHEN IT IS VERY CLEAR THAT THEY ARE NOT VIOLATING AND THAT THEY

13   ARE NOT GOING TO BE A PROBLEM.  AND SO THE COURT CAN TAKE INTO

14   CONSIDERATION HER PERFORMANCE ON SUPERVISED RELEASE AS AN

15   INDICATION OF WHAT SHE WOULD DO IF RELEASED IN THIS CASE.  SHE

16   KNOWS THAT SHE CANNOT GO TO MEXICO.  PLENTY OF PEOPLE IN THE

17   BORDER DISTRICT HAVE FAMILY IN TIJUANA, IN OTHER PARTS OF

18   MEXICO.  THEY CROSS FREQUENTLY.  SHE CROSSED FREQUENTLY.  THAT

19   IS NOT BEING DENIED.  BUT SHE'S A U.S. CITIZEN, AND SHE

20   ABSOLUTELY KNOWS THAT IF SHE WERE TO FLEE TO MEXICO IN THIS

21   CASE, SHE WOULD NEVER BE ABLE TO COME BACK TO THE UNITED

22   STATES.  AND THE UNITED STATES IS, IN FACT, EXACTLY WHERE SHE

23   WANTS TO BE BECAUSE SHE WORKS HERE, SHE LIVES HERE, SHE WANTS

24   TO HAVE HER LIFE HERE.

25       AND I KNOW IT SOUNDS A LITTLE FUNNY TO SAY THAT THE FACT

```
 1    THAT A WARRANT WAS ISSUED IN HER PREVIOUS CASE WEIGHS IN FAVOR

 2    OF BAIL HERE, BUT AT THIS POINT, SHE KNOWS WHAT HAPPENED IN

 3    THAT CASE.  SHE WENT TO MEXICO, SHE VOLUNTARILY CAME BACK TO

 4    THE PORT OF ENTRY AND WAS ARRESTED, AND IT DID NOT WORK OUT SO

 5    WELL FOR HER.  AND I THINK SHE KNOWS THAT IF SHE DID IT AGAIN,

 6    THE EXACT SAME THING WOULD HAPPEN.  SHE'S BEEN THROUGH THAT

 7    BEFORE.  SHE IS NOT PLANNING ON DOING THAT AGAIN.  I DO NOT

 8    HAVE A CONCRETE SURETY LINED UP RIGHT NOW, YOUR HONOR, THAT I

 9    CAN GIVE TO THE COURT, BUT I AM SPEAKING WITH HER FAMILY.  I

10    HAVE LEFT VOICEMAILS FOR HER EMPLOYER, HER BOSS, WHO MIGHT BE

11    ABLE TO SIGN ON A BOND FOR HER.  SO WHAT I'M ASKING IS THE

12    COURT DENY THE GOVERNMENT'S BAIL APPEAL, SET BOND IN THE AMOUNT

13    OF $15,000 WITH ONE SIGNATURE AND A 10 PERCENT CASH DEPOSIT.

14    AND THERE ARE PENDING PROCEEDINGS FOR THE SUPERVISED RELEASE

15    VIOLATIONS, SO I SUPPOSE I WOULD NEED TO GET A SEPARATE BOND IN

16    THAT CASE.  BUT I ASKED THE JUDGE TO SET A BOND HERE SO THAT

17    WHEN A SURETY IS LOCATED, WE CAN HIT THE GROUND RUNNING.

18        THANK YOU, YOUR HONOR.

19            MR. SWAN:  VERY BRIEFLY, YOUR HONOR.  JUST THREE

20    THINGS.  FIRST, I CONFIRMED WITH THE CASE AGENT WHO IS PRESENT

21    HERE THAT JUSTIN DANIEL SOSA, THE -- THE DEFENDANT'S BROTHER

22    WHOSE IDENTITY IS AT ISSUE HERE, DID MAKE A STATEMENT TO LAW

23    ENFORCEMENT OVER THE PHONE SEPARATE AND APART FROM THE BORDER

24    INTERACTION.  AND TO REMIND DEFENSE COUNSEL AND THE COURT, THE

25    VICTIM IN THIS CASE ALLEGED THAT HIS SISTER APPROACHED HIM,
```

1    ASKED HIM FOR HIS IDENTITY DOCUMENTS SO SHE COULD SMUGGLE HER

2    BOYFRIEND INTO THE UNITED STATES, AND WHEN HE DECLINED, HIS

3    IDENTIFICATION DOCUMENTS WENT MISSING.  AND HE BELIEVES THAT

4    HIS SISTER STOLE THEM.  SO THERE IS DIRECT EVIDENCE.

5        SECOND, THERE HAVE BEEN SURETIES IDENTIFIED BY THE DEFENSE

6    COUNSEL DURING THIS PROFFER.  SEVERAL OF THE SURETIES THAT WE

7    KNOW LIVE IN THE UNITED STATES ARE SURETIES, SIBLINGS THAT LIVE

8    IN THE UNITED STATES, HAVE DISQUALIFYING CRIMINAL HISTORY.  AND

9    ONE OF THE SISTERS WHO LIVES IN MISSION VALLEY, BASED ON HER

10   BORDER CROSSING RECORDS, WAS ACTUALLY INSIDE THE CAR WITH THIS

11   DEFENDANT AND HER CO-DEFENDANT AT THE TIME THEY CROSSED THE

12   BORDER, AND SO HER INVOLVEMENT WOULD DISQUALIFY HER FROM THE

13   UNITED STATES' PERSPECTIVE AS A POTENTIAL SURETY AS WELL.  IT

14   DOES NOT APPEAR THAT THERE'S A SURETY THAT HAS VOLUNTEERED OR

15   BE READILY AVAILABLE TO SERVE.  AND THE PRIOR SURETY IN THE

16   PRIOR CASE INDICATED IN THAT CASE THAT SHE NO LONGER WISHES TO

17   SERVE AS A SURETY.

18       AND THEN LASTLY, AS TO THE CONTACT WITH SUPERVISED RELEASE

19   WITH THE PROBATION OFFICER, OUR INFORMATION'S A BIT DIFFERENT.

20   I CAN PROFFER TO THE COURT THAT INFORMATION WAS PROVIDED FROM

21   PROBATION, THAT WHILE THIS DEFENDANT WAS ON THE LOWEST RUNG OF

22   SUPERVISION, PROBATION DID NOT HAVE CONTACT INFORMATION OR A

23   CURRENT ADDRESS TO ACTUALLY GET IN TOUCH WITH HER.  AND AS THE

24   COURT IS WELL AWARE, AS WELL AS THE PETITION TO REVOKE

25   SUPERVISED RELEASE HAS SINCE BEEN FILED, THIS DEFENDANT IS

1    ALLEGED TO HAVE COMMITTED EVERY ACT ALLEGED IN THE INDICTMENT

2    WHILE SHE WAS ON SUPERVISED RELEASE.  SO WE HAVE A VERY GOOD

3    IDEA OF WHAT SHE DOES WHEN SHE'S ON RELEASE.  SHE DOESN'T

4    COMPLY WITH COURT ORDERS.  AND IF A COURT ORDER IS SET HERE,

5    SHE'S NOT GOING TO ABIDE BY IT.  SHE'S DONE IT MULTIPLE TIMES.

6         **THE COURT:**  THE DECISION OF THE MAGISTRATE JUDGE IS

7    REVERSED.  THE DEFENDANT HAS SUBSTANTIAL TIES TO BOTH THE

8    UNITED STATES AND MEXICO.  HER MOTHER AND CHILD LIVE IN MEXICO.

9    THE EVIDENCE IS STRONG, INCLUDING PHOTOS OF THE PORT OF ENTRY.

10   AND IF CONVICTED, SHE FACES A MINIMUM OF TWO YEARS IN PRISON.

11   SHE WAS ON SUPERVISED RELEASE FOR A CASH SMUGGLING FELONY

12   CONVICTION AT THE TIME OF THE OFFENSE AND FACES REVOCATION AND

13   ADDITIONAL PRISON TIME ON THAT CASE.  MOST IMPORTANTLY, SHE WAS

14   ON PRE-TRIAL RELEASE IN THE LAST CASE, AND SHE FLED AND FAILED

15   TO APPEAR.  THAT IS THE BEST PREDICTOR OF WHETHER SHE WILL

16   ABIDE BY THE COURT'S CONDITIONS.  SHE HAS NOT COMPLIED WITH THE

17   CONDITIONS OF RELEASE IN THE PRIOR CASE AND WAS ARRESTED FOR

18   BAIL VIOLATION, AND SHE VIOLATED SUPERVISED RELEASE.  TO DETER

19   A SUBSTANTIAL RISK OF FLIGHT, A LARGE SECURED PROPERTY BOND IN

20   AT LEAST $150,000 IS REQUIRED AND THERE IS NO POSSIBLE SURETY

21   WITH PROPERTY.  THE DEFENDANT SHALL BE DETAINED WITHOUT

22   PREJUDICE.  THERE ARE NO CONDITIONS THAT SHE CAN AND WON'T

23   ABIDE BY THAT WILL SECURE HER PRESENCE IN COURT.  THE

24   GOVERNMENT SHALL PREPARE A DRAFT ORDER AND SUBMIT TO DEFENSE

25   COUNSEL.

1          **MR. SWAN:**  THANK YOU, YOUR HONOR.  WILL DO.

2          **THE COURT:**  WE ARE IN RECESS.

3          **MR. DOYLE:**  THANK YOU, YOUR HONOR.

4          **(WHEREUPON, THE PROCEEDING CONCLUDED AT 6:09 P.M.)**

5

6

7

8                    *C E R T I F I C A T E*

9

10                        -oOo-

11

12       I certify, by signing below, that the foregoing is a
correct stenographic transcript of the oral proceedings had in
13  the above-entitled matter this 11th day of September, 2025.  A
transcript Without an original signature or conformed signature
14  is not certified.  I further certify that the transcript fees
and format comply with those prescribed by the Court and the
15  Judicial Conference of the United States.

16

17                Dated:  September 18, 2025

18
                     _____/S/ JENNIFER GIBSON_____
19
                 **JENNIFER G. GIBSON, CSR NO. 12802**
20

21

22

23

24

25